IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMSOIL, INC.,

                 Plaintiff,              OPINION AND ORDER

   v.

                                            20-cv-759-wmc

REMVER, LLC,

                 Defendant.

---

     In this case, plaintiff AMSOIL, Inc., seeks declaratory judgment related to various contracts between it and defendant Remver, LLC, as well as between Remver and two independent contractors. Remver has moved to dismiss this case on the grounds that the parties agreed to a forum selection clause, which directs that exclusive jurisdiction over this dispute resides in Dallas County, Texas, and the Northern District Court of Texas. (Dkt. #5.) The court agrees that the forum selection clause is valid and controlling, but rather than dismiss the case as defendant requested, will instead transfer this case to the District Court for the Northern District of Texas.

BACKGROUND

     Plaintiff AMSOIL is a developer, manufacturer, and supplier of synthetic lubricants. Defendant Remver is a Texas consulting firm. In winter of 2019, AMSOIL sought to retain a consultant to develop and implement certain IT and cyber security systems ("the Amsoil Project"). To that end, AMSOIL and Remver executed a Mutual Non-Disclosure and Confidentiality Agreement (the "NDA") on December 12, 2019, and a week later executed

a Professional Services Agreement (the "PSA"). The NDA contains the following non-solicitation clause:

> No Solicitation of Employees. The party receiving such Confidential Information agrees that it will not, for a period of three (3) years from the date of this Agreement, initiate contact with the disclosing party's employees in order to solicit, entice or induce any employee of the disclosing to terminate an employment relationship with the disclosing party in order to accept employment with the disclosing or any of its affiliates or subsidiaries. Notwithstanding the foregoing, the Receiving Party may hire any person that responds to a general solicitation that is not directed specifically to any of the Disclosing Party's employees.

(Compl., Ex. A (dkt. #1-1) 24.) The NDA also contains the following choice-of-law and forum-selection provision:

> This Agreement shall be construed and controlled by the laws of . . . Texas, and both parties further consent to jurisdiction by the state and federal courts sitting in Texas.

(*Id.* at 25.)

The PSA contains its own choice-of-law and forum-selection provision:

> It is the intention of the Parties to this Agreement that this Agreement and the performance under this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of Texas, without regard to the jurisdiction in which any action or special proceeding may be instituted. The parties acknowledge and consent to the exclusive jurisdiction of, and venue in, the courts of the State of Texas in Dallas County, and the United States District Court for the Northern District of Texas, with such courts being the exclusive jurisdiction for all disputes that relate to, or arise from, this Agreement. . . .

(Compl., Ex. B (dkt. #1-1) 35-36.)

Finally, the PSA explains in a "Confidentiality" provision:

2

> If and to the extent there is any conflict as between the terms of this Agreement and the NDA, the NDA shall control.

(*Id.* at 32.)

Remver then contracted with independent contractors Patrick Cowan and Brian Brooks to work on the Amsoil Project. Unfortunately, only a few months into the Project, the COVID-19 pandemic began to spread in the United States. In light of the uncertainties that created, AMSOIL notified Remver in writing that it needed to sign off on the Amsoil Project as "being essentially complete." (Compl. (dkt. #1-1) ¶ 31.) On March 23, 2020, Claudia Tatum, CEO of Remver, agreed to end the Project. The next day, Tatum also emailed Cowan and Brooks, instructing them to cease their work for AMSOIL. A closing meeting was held on March 27, 2020, between AMSOIL and Remver at which the parties formally agreed that the Amsoil Project was complete.

Scott Davis, Vice President of Operations for AMSOIL, then contacted Cowan and Brooks to inquire about their interest in providing additional IT consulting services to AMSOIL. Neither Cowan nor Brooks solicited AMSOIL for this additional consulting work, although both individuals expressed interest in continuing to work with AMSOIL, and represented that there were no obstacles or other agreements prohibiting them from working with AMSOIL.

On April 7, 2020, however, AMSOIL received a cease and desist letter from Remver, which demanded that it immediately terminate any engagement with Cowan and Brooks or face legal action. In this letter, Remver also explained that it had Independent Contractor and Confidentiality Agreements (the "Independent Contractor Agreements") with Cowan and Brooks, and it accused AMSOIL of tortiously interfering with those

3

contracts. However, these agreements were not attached to the cease and desist letter, and AMSOIL was not aware of their terms. In addition, Remver accused AMSOIL of violating the non-solicitation provision of the Mutual Non-Disclosure and Confidentiality Agreement between AMSOIL and Remver. The day after receiving this letter, AMSOIL "reluctantly" terminated its agreements with Cowan and Brooks, and neither have provided consulting services to AMSOIL since that date. (*Id.* ¶ 43.)

On June 18, 2020, after "numerous requests," Remver also provided AMSOIL with redacted copies of the Independent Contractor Agreements. (*Id.* ¶ 44.) According to AMSOIL, the terms of these agreements merely prohibited Cowan and Brooks from soliciting work from AMSOIL. Similarly, AMSOIL argues, its own agreements with Remver do not prohibit it from contracting with Cowan and Brooks. As a result, AMSOIL claims that Remver's allegations of a breach of their agreements with Cowan, Brooks or Remver are all based on a "false premise." (*Id.* ¶ 45.)

AMSOIL then filed this suit in Wisconsin state court on June 30, 2020, seeking declaratory judgment that AMSOIL did not interfere with Remver's Independent Contractor Agreements with Cowan or Brooks, and that it may lawfully engage Cowan and Brooks to perform services on behalf of AMSOIL. After removing the case to this court on the basis of diversity jurisdiction, Remver also filed a related suit against AMSOIL on August 7, 2020, in state court in Dallas County, Texas.

4

OPINION

Remver moves to dismiss the present case under principles of *forum non conveniens*.[1] As a general matter, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (alteration in original) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). Defendant argues that the mandatory forum selection clause in the PSA applies, and that this case should have been brought in Texas. AMSOIL counters that the *permissive* forum selection clause in the NDA, not the PSA, applies, making venue proper in Wisconsin.

This presents two, threshold questions: (1) whether the PSA forum selection clause is valid and mandatory; and (2) whether the present dispute falls within the scope of that clause. This is a matter of contract interpretation under the laws of Texas. *See Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014) ("In contracts containing a choice of law clause . . . the law designated in the choice of law clause would be used to determine the validity of the forum selection clause."). Because the court concludes that the PSA forum clause is valid and applicable to the present dispute under Texas law for the reasons explained below, it will then proceed to consider Remver's motion to dismiss under the framework set forth in *Atlantic Marine Construction Co.*, 571 U.S. 49.

---

[1] In the alternative, Remver also moves to dismiss this case for improper venue under Federal Rule of Civil Procedure 12(b)(3). (Def.'s Br. (dkt. #5) 4 n.1.) However, because the court concludes that principles of *forum non conveniens*, codified in part under 28 U.S.C. § 1404(a), support transfer, the court need not address whether venue was improper under Rule 12(b)(3).

## I. The PSA forum selection clause is valid and mandatory

Under Texas law, a court "must ascertain and give effect to the parties' intentions as expressed in the document." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). In particular, "forum-selection clauses are generally and presumptively enforceable." *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010). Further, when a forum selection clause provides that a specific jurisdiction has "exclusive jurisdiction," such a clause is mandatory. *See In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559 (Tex. 2004) (holding the enforcement of forum selection clause stating that the parties "consent to the exclusive jurisdiction of the courts of Montgomery County, Pennsylvania" is mandatory). Here, the PSA forum selection clause provides that "exclusive jurisdiction" rests in the "courts of the State of Texas in Dallas County, and the United States District Court for the Northern District of Texas." Applying this plain language, the clause is mandatory and enforceable.

Plaintiff's arguments to the contrary are not persuasive. First, plaintiff argues that "[n]o provision in the PSA has life after its termination," suggesting that the forum selection clause is no longer valid. (Pl.'s Opp'n (dkt. #7) 12.) However, this position is expressly contradicted by settled Texas law, which holds that forum selection clauses remain in force after the termination of the remainder of the agreement. *See Deep Water Slender Wells, Ltd. v. Shell Int'l Expl. & Prod., Inc.*, 234 S.W.3d 679, 691 (Tex. App. 2007) ("The forum-selection clause addresses the forum in which the parties will litigate any future disputes arising out of or relating to the Consulting Agreement. Therefore, the parties intended and impliedly agreed for this clause to remain in force after [the

termination of the agreement]."); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 238-39 (S.D. Tex. 1997) (enforcing forum selection clause even though contract had expired before lawsuit was filed).

Second, plaintiff argues that the clause is unenforceable as a matter of Wisconsin public policy. To support this argument, however, plaintiff points primarily to *Tuminaro v. Garland Co.*, No. 11-CV-203-BBC, 2011 WL 10501186 (W.D. Wis. May 6, 2011), which concluded that an Ohio forum selection clause in a contract was against Wisconsin public policy and unenforceable because of conflicts between Ohio and Wisconsin law regarding the enforceability of noncompete agreements. *Id.* at *2. However, *Tuminaro* is predicated on the application of *Wisconsin* law and public policy. In contrast, both the NDA and the PSA at issue contain *Texas* choice-of-law provisions, and thus, the enforceability of the forum-selection clause is governed by that law. *See Jackson*, 764 F.3d at 775 ("In contracts containing a choice of law clause . . . the law designated in the choice of law clause would be used to determine the validity of the forum selection clause."); *IFC Credit Corp.v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) ("[T]he validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute."). Moreover, the issue in *Tuminaro* was the *validity* of a noncompete agreement, which implicated "Wisconsin's strong public policy governing covenants not to compete." 2011 WL 10501186, at *3. Here, there appears to be no dispute between the parties as to the *validity* of the NDA; the question in dispute is instead as to its proper interpretation.

Regardless, since forum-selection clauses are presumptively enforceable under both Texas, *In re Laibe Corp.*, 307 S.W.3d at 317, and Wisconsin law, *Pietroske, Inc. v. Globalcom, Inc.*, 2004 WI App 142, ¶ 1, 275 Wis. 2d 444, 685 N.W.2d 884, the court finds the forum selection clause in the PSA at issue here to be valid and mandatory.

## II. The present dispute is governed by the PSA forum selection clause

The forum selection clause in the PSA applies to "all disputes that relate to, or arise from, this Agreement." Plaintiff argues that the present action "arises out of the NDA, *not* the terminated PSA." (Pl.'s Opp'n (dkt. #7) 14.) Defendant counters that the language in the PSA is broad, and given the factual basis of the dispute, "there can be no doubt that it 'relates to' or is 'connected with' the Professional Services Agreement." (Def.'s Br. (dkt. #5) 7.)

"When a forum-selection clause encompasses all 'disputes' 'arising out of' the agreement, instead of 'claims,' its scope is necessarily broader than claims based solely on rights originating exclusively from the contract." *Pinto Tech. Ventures, L.P. v. Sheldon,* 526 S.W.3d 428, 439 (Tex. 2017). Texas courts that have considered similar language have concluded that such forum selection "clauses are broad and encompass all claims that have some possible relationship with the agreement, including those claims that may only 'relate to' the agreement. . . . The phrase 'relates to,' in particular, is recognized as a very broad term." *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App. 2010) (citing cases).

Certainly, the present lawsuit "relates to" the PSA. Not only is the PSA referenced and discussed throughout the complaint, but Brooks and Cowan worked for AMSOIL under the terms of the PSA. Even more fundamentally, AMSOIL alleges that the PSA does

not prohibit it from hiring Brooks and Cowan *and* seeks a declaration to the meaning of its terms.[2]

Having said that, the case also relates to the NDA, but that fact in no way negates the relevance of the PSA. Moreover, the forum-selection clause in the NDA does *not* conflict with that in the PSA. The NDA provides that "both parties . . . consent to jurisdiction by the state and federal courts sitting in Texas." Because this clause does not specify that Texas courts have "exclusive" jurisdiction, it does not *require* any particular jurisdiction. *In re Wilmer Cutler Pickering Hale & Dorr LLP*, 2008 Tex. App. LEXIS 9692, *9-10, 2008 WL 5413097 ("Courts have recognized that clauses in which parties merely 'consent' or 'submit' to the jurisdiction of a particular forum are permissive rather than mandatory, and a mere consent-to-jurisdiction clause will not justify dismissing a suit that is filed in a different forum."). Thus, the NDA provides that the parties "consent" to the jurisdiction of Texas courts, while the PSA provides that Texas jurisdiction is exclusive and mandatory, but there is no conflict. Thus, the court need not reconcile these two provisions. *See Nicolais v. Balchem Corp.*, 2015 WL 6436747, at *4 (E.D. Mo. Oct. 22, 2015) (rejecting the arguing that a permissive forum-selection clause and a mandatory forum- selection clause were conflicting, even though they were directed to different forums).[3]

---

[2] Defendant also points to representations made by plaintiff in the related Texas state court case to support its argument that this case "relates to" the PSA. (Dkt. #11.) However, any representations in that case have *no* relevance to the motion before this court.

[3] As here, the parties in *Nicolais* entered into two agreements – first, a Stock Purchase Agreement ("SPA") with a permissive forum selection clause consenting to Delaware courts, and second, an Employment Agreement ("EA") requiring jurisdiction in New York. 2015 WL 6436747, at *4.

**III. The case will transferred to the Northern District of Texas**

Having concluded that the PSA forum selection clause is valid and applicable, the court must also consider its effect. In *Atlantic Marine,* the Supreme Court set forth the proper standard for evaluating whether to transfer or dismiss in light of a valid forum selection clause. The Court explained that where a forum selection clause points to a state or foreign forum, the proper way to enforce the clause is through the doctrine of *forum non conveniens*. 571 U.S. at 60. The proper mechanism for enforcement of forum-selection clauses that point to a particular federal district is 28 U.S.C. § 1404(a), which the Court observed is "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id*. at 59-60. In either case, however, the standard is the same: "because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Id.* at 61.

More specifically, the Court explained that "[i]n the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non*

---

The district court also found no conflict between these two clauses, reasoning that: "the parties knew there was a forum selection clause in the SPA, but subsequently they agreed to the [EA] with an arguably more restrictive forum selection clause. It is reasonable to conclude then, that the parties intended that suits involving the [EA] would be brought in New York, which would be allowed under the ostensibly permissive forum selection clause found in the SPA." *Id.*

*conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Id.* at 62. Moreover, when the case involves a valid forum-selection clause, "the plaintiff's choice of forum merits no weight." *Id.* at 63. Nor should a court "consider arguments about the parties' private interests." *Id.* at 64. Rather, the court "may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* (internal citation omitted). Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62.

Defendant points out that court congestion is nearly identical between this district and the District Court for the Northern District of Texas. As previously noted, since the PSA specifies that Texas law applies, the courts in Texas are obviously more at home with that law. For its part, plaintiff argues that Wisconsin has an interest "in having a dispute arising out of meritless claims asserted against a family-owned Wisconsin-based company [be] decided in Wisconsin" and "in protecting the contractual rights of Wisconsin-based companies and Wisconsin residents." (Pl.'s Opp'n (dkt. #7) 19.) By this logic, however, the State of Texas has an equal interest in having a dispute arising out of claims against a Texas-based company and in protecting the contractual rights of a Texas-based company and Texas residents. Finally, as noted above, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc.*, 487 U.S. at 33). This is not such an exceptional case.

11

The final question is whether this case should be transferred or dismissed outright. Section 1404(a) enables a federal court to transfer a case to another federal district. However, a federal court is powerless to transfer a case to a state court (or foreign court), except to remand it back to a state court where it had been initially filed. *See* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3803.1 (4th ed.) (2021). Defendant argues that this case should be dismissed, rather than transferred, citing *Mueller v. Apple Leisure Corp.*, 880 F.3d 890 (7th Cir. 2018), and *Weber v. PACT XPP Techs., AG*, 811 F.3d 758 (5th Cir. 2016), for the proposition that dismissal and not transfer may be appropriate in certain circumstances. (Def.'s Reply (dkt. #9) 11.) In *Mueller*, however, the forum selection clause required the parties to litigate in Delaware County, Pennsylvania, 880 F.3d at 892; and in *Weber*, the selected forum was Germany, 811 F.3d at 763. In neither case did the contract at issue provide an alternate federal forum.

Defendant also argues that it has already filed a complaint against defendants AMSOIL, Brooks, and Cowan in Texas state court, and "[i]f the [c]ourt transfers this case to the Northern District of Texas, there will be two separate lawsuits covering the parties' claims." (Def.'s Reply (dkt. #9) 11.) According to defendant, therefore, "judicial efficiency" requires dismissal rather than transfer. The court is not persuaded by this argument, since defendant filed the Texas state court lawsuit *after* plaintiff filed the present federal lawsuit, thus creating the problem that it now tries to leverage against plaintiff.

In the end, the Supreme Court described dismissal under the doctrine of *forum non conveniens* as a "harsh[] result." *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Where an alternative exists -- transfer to another federal court in the forum chosen by the parties,

rather than dismissal -- the court will exercise its discretion to bypass the "harsher result." Ultimately, defendant can hardly complain about this outcome, having agreed to a forum-selection clause that permitted suit in *either* Dallas County, Texas, or the United States District Court for the Northern District of Texas, particularly since any inefficiencies resulting from duplicative litigation are of plaintiff's own making.

ORDER

IT IS ORDERED that defendant's motion (dkt. #5) is GRANTED IN PART by ordering this case to be transferred to the United States District Court for the Northern District of Texas.

Entered this 13th day of August, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge